TRULINCS 35578509 - MCCLINTON, ANDRE L - Unit: JES-G-B

---

UNITED STATES DISTRICT COURT
Northern District of Georgia Brunswick

Andre Mcclinton
Petitioner,
v.
WARDEN, Ray
Respondent.

Case No.

2:25cv098

PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

QUESTION PRESENTED:
Whether the Bureau of Prisons ("BOP") is unlawfully extending Petitioner's confinement by arbitrarily withholding application of First Step Act Time Credits (FTCs), employing an unauthorized "banking" policy, refusing to apply credits to community placement, and failing to comply with 18 U.S.C. § 3632(d)(4) despite Petitioner having accrued 540 FTC days to date and now being past his lawful release date.

---

STATEMENT OF THE CASE
Petitioner respectfully files this habeas corpus petition under 28 U.S.C. § 2241 to challenge the BOP's unlawful withholding of earned FTCs that should have accelerated his transfer to community custody or outright release. Petitioner has satisfied all statutory criteria for FTC accrual since May 2022 participating in eligible programs, maintaining a low PATTERN score, and consistently remaining compliant with BOP requirements.

From May 2022 through December 2022, Petitioner accrued 10 days of FTCs per 30-day period; from December 2022 to present, he accrued 15 days per 30-day period. Petitioner now has approximately 540 FTC days. Pursuant to 18 U.S.C. § 3632(d)(4), these credits "shall be applied" toward earlier release or prerelease custody.

Yet, despite this statutory mandate and the accumulation of over 17 months' worth of earned credit, the BOP projects Petitioner's transfer date as June 16, 2027. This continued confinement violates both statutory authority and clear agency guidance.

---

ARGUMENT
I. The BOP's Delay in Applying FTCs Is Contrary to Law

Under 18 U.S.C. § 3632(d)(4)(C), "[e]arned time credits shall be applied toward time in prerelease custody or supervised release." The term "shall" is unambiguous and mandatory. The BOP cannot substitute its own time-banking scheme for the plain text of the statute.

Instead of applying credits as they are earned, the BOP improperly "banks" FTCs, withholding their effect until the final months of the sentence. This practice not only lacks statutory support, it directly frustrates the rehabilitative intent of the First Step Act.

Multiple courts have rejected the BOP's interpretation. See Goodman v. Ortiz, 2020 WL [redacted] (D.N.J. 2020) ("The [BOP's] refusal to apply earned time credits as they accrue is inconsistent with the plain text of the statute."); NO. 20-758 Ochoa v. Warden

TRULINCS 35578509 - MCCLINTON, ANDRE L - Unit: JES-G-B

---

FCI Berlin, No. 1:23-cv-94 (D.N.H. 2023) ~~2022 WL 364610, at *5 (D. Kan. 2022)~~ (holding that "time credits must be applied as earned").

---

## II. The BOP's Refusal to Apply Credits During RRC or Home Confinement Is Unsupported

DOJ guidance and BOP policy manuals acknowledge that FTCs may continue to accrue and apply even during placement in a Residential Reentry Center (RRC) or home confinement, provided that the inmate remains eligible and compliant. And as clarified in DOJ Memorandum (Marshall Memo, 2024), the BOP cannot impose caps or artificial limits on time credits once the statutory eligibility threshold is met. There is no authority for "banking" earned time credits or resetting balances to zero once 365 days have accrued.

To deny FTCs during these stages is to nullify the intent of the statute, which explicitly permits application of FTCs toward "prerelease custody." It is illogical and legally unsupported for the BOP to argue that such placements are somehow excluded from credit application. See ~~Burg v. Fikes, 2023 WL 2034179 (S.D. Cal. 2023)~~ ~~(recognizing credit eligibility while in RRC if programming continues)~~. Rehfuss v. Spaulding, No 1:23-cv-10502

### Rule

Under 18 U.S.C. § 3632(d)(4)(C), individuals "shall be eligible to apply time credits earned... toward early release to pre-release custody or supervised release." The regulation at 28 C.F.R. § 523.44(a)(1) affirms that "the Bureau shall apply earned time credits toward prerelease custody or supervised release" when the prisoner is determined to be eligible. Further, under DOJ guidance (e.g., Marshall memorandum, 2022), no cap on FTC usage is authorized, and eligible individuals continue to earn FTCs even in halfway house or home confinement, as long as they are participating in eligible activities.

---

## III. The BOP's Conduct Results in Unlawful Detention

Petitioner's earned credits equal approximately 540 days. By simple statutory calculation, this should result in a reduction of 540 days from the projected sentence end date which is now 6/16/2027 which means Mcclinton has less than two years left and according to the BOP own assessment sheet Mcclinton could qualify for up to 365 days of Second chance act reducing Mcclinton time to under a year if granted a year of second chance act. Yet Petitioner remains incarcerated, and the BOP has inexplicably failed to justify why Petitioner remains confined past his earned release window. In short Mcclinton, FTC are now equal to his time remaining under the statue.

Even if the BOP arbitrarily claims only 520 days are earned, what lawful calculation or methodology produces a sentence end date in 2027 in which his FTC would be equal to his time remaining? The government must reconcile this inconsistency how does 540 FTC days (or even 520) not equal 540 (or 520) fewer days of incarceration? Petitioner respectfully asks this Court to compel the government to explain how earned time does not equal reduced time. Or what happens to the FTC credit earned from 6/16/25 through 6/16/27 which is 2 years ( so one year of FTC)?

---

## IV. Anticipated Government Argument on Jurisdiction and Placement

Petitioner anticipates the government will argue this Court lacks jurisdiction to dictate placement decisions (e.g., RRC or home confinement) and may cite cases such as Reeb v. Thomas, 636 F.3d 1224 (9th Cir. 2011). However, this argument fails where the underlying claim is not a mere placement challenge but a statutory violation i.e., the unlawful non-application of credits Congress has made mandatory.

This distinction has been recognized in numerous cases. See Goodman, supra; ~~Burg, supra~~; Watts v. Warden, 2023 WL ~~2131317 (M.D. Pa. 2023)~~. Woodley v. Warden No. 5:23-cv-03273-HLT In each, the district court exercised jurisdiction under § 2241 where the petitioner alleged unlawful FTC non-application in violation of 18 U.S.C. § 3632(d)(4).

---

TRULINCS 35578509 - MCCLINTON, ANDRE L - Unit: JES-G-B
--------------------------------------------------------------------------

V. Exhaustion Should Be Waived as Futile

Petitioner is currently beyond his lawful release date. He cannot await the slow pace of administrative remedy processes while unlawfully confined. Exhaustion is not required where, as here, it would be futile or result in irreparable harm. See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012); Acevedo-Ramos v. United States, 961 F.2d 305, 309 (1st Cir. 1992).

---

RELIEF REQUESTED

Petitioner respectfully asks this Court to:

1. Declare that the BOP's refusal to timely apply and cap FTCs is unlawful;

2. Order the immediate application of Petitioner's 540 earned FTC days;

3. Direct the BOP to recalculate Petitioner's release date and place Petitioner in community custody or supervised release immediately;

4. Compel the government to explain how its current sentence computation reconciles with the statutory requirement that "each earned credit shall be applied toward time in prerelease custody or supervised release"; ● Mr. McClinton's Earned FTCs Exceed His Time Remaining   He Qualifies for Immediate Transfer

Under 18 U.S.C. § 3632(d)(4)(C), an eligible inmate may apply FTCs "toward time in prerelease custody or supervised release" only when:

> "the prisoner's earned time credits are equal to the remainder of the prisoner's imposed term of imprisonment."

5. Grant any further relief this Court deems just and proper.

---

CONCLUSION

Congress mandated that FTCs be applied "as earned," not held in reserve at the BOP's discretion. The BOP's failure to apply 540 days of earned FTCs unlawfully extends Petitioner's confinement. Petitioner respectfully requests this Court intervene and provide immediate relief to prevent further illegal incarceration.

A fundamental question remains unanswered by the Bureau of Prisons: What happens to the FTC earned from June 2025 through June 2027, if Petitioner's projected release date based on the BOP's own time credit system is June 16, 2027? Are these additional FTCs merely discarded, or can they be applied toward earlier release, RRC placement, or supervised release acceleration?

Further, if the BOP acknowledges that Petitioner has already earned 520 days, 365 which has been put towards release (i.e., a full year and five months of FTCs), and 155 days has been applied toward home confinement, how does this fit within the statute's requirement that earned time credits "shall be applied toward the prisoner's pre-release custody or supervised release"? Or how can his "FTC● equal to the remainder of his term of imprisonment which 2027"? if his FTC are capped at 520?

TRULINCS 35578509 - MCCLINTON, ANDRE L - Unit: JES-G-B

---

These discrepancies expose a structural flaw in the BOP's implementation essentially "banking" earned time and restarting the clock, thereby forcing individuals to earn credits against the same portion of time twice. This undermines the statutory language and creates an unlawful delay in release eligibility.

Petitioner respectfully asks this Court to resolve these contradictions and clarify:

> When FTCs earned exceed the time remaining, where do they go? How is the BOP permitted to both bank and apply credits inconsistently and still assert full compliance with 18 U.S.C. § 3632(d)(4)(C)?


This legal question squarely falls within the Court's jurisdiction to address unlawful custody under § 2241, particularly where exhaustion is excused due to futility and the prisoner being held beyond a date that statutory credits would otherwise allow for release.

Respectfully submitted,
Andre Mcclinton

TRULINCS 35578509 - MCCLINTON, ANDRE L - Unit: JES-G-B

---

Task Force

July 23rd, 2025

---

The Federal Bureau of Prisons (BOP) announced the formation of its First Step Act (FSA) Task Force earlier this month to target moving more inmates from federal prisons to community placement, known as prerelease custody. The BOP is also maximizing bed-space in Residential Reentry Centers (halfway houses) for those in most need of these important reentry services. The initiative is part of fully implementing the FSA, which was signed into law by Donald J. Trump in December 2018 during his first term in office. BOP Director William Marshall III stated when the Task Force was announced that, "Staff were taking the blame for delays they didn't cause. They told me their systems weren't always showing the right dates. Inmates and their families assumed they were ignoring my directive. That wasn't true for the vast majority of our staff .But let me be absolutely clear   where we find that 1% who weren't doing their jobs with integrity, we will find them and hold them accountable because accountability goes both ways."

---

Task Force Leadership

Rick Stover, Sr. Deputy Assistant Director Designation and Sentence Computation Center (DSCC), has had a distinguished career with the Bureau of Prisons (BOP). With over three decades of correctional experience, he understands the importance of what he calls "getting the ship turned in the right direction" regarding FSA. He draws from his years of experience as a case manager, correctional programs administrator in Washington, DC, and Warden at the Federal Correctional Institution in Danbury, Connecticut. Stover was an active member of the committee responsible for selecting inmates for home confinement under the CARES Act. This act allowed the BOP to move inmates with underlying medical conditions to home confinement to mitigate the risks of COVID-19 in prison settings. As a result of the committee's efforts, nearly 50,000 inmates placed on home confinement successfully completed their sentences without incidents. This outcome highlighted that alternatives to incarceration can be effective.

Stover, along with a team of over 30 analysts from the DSCC, is responsible for reviewing inmates eligible for home confinement or community custody under the First Step Act (FSA). This task force was formed due to ongoing issues with the Bureau of Prisons' computer systems, which are struggling to accurately calculate FSA credits. Each month, eligible inmates can participate in programs to earn up to 15 credits, which reduce their sentences. While the maximum reduction is capped at 365 days, inmates serving sentences longer than 48 months can use these credits toward home confinement.

Since the implementation of the final rule outlining FSA guidance, the Bureau of Prisons (BOP) has struggled with accurately calculating the credits. The agency has focused on calculating the monthly credits without considering the projected date for earning all credits. As a result, inmates who could be placed in community halfway houses or home confinement end up staying in prison longer than necessary.

---

Expectations Are High

Prisoners I've spoken to about the Task Force have been confused by conflicting information about the FSA since it began. Case managers have struggled to understand how to combine the FSA with the Second Chance Act, a law signed by George W. Bush that allowed for up to a year of community placement. Former BOP Director Colette Peters strongly supported "stacking," which combined the benefits of the FSA with the community placement offered by the Second Chance Act. However, the BOP couldn't fully implement this due to capacity issues at halfway houses, as there was simply not enough room to accommodate inmates coming from institutions.

While Peters' administration couldn't move more inmates to halfway houses, they did provide calculations to estimate when an inmate could leave the institution for such placement. This created additional frustration, as case managers handling the paperwork often faced resistance from Residential Reentry Managers (RRMs) who coordinate community placements. As a

TRULINCS 35578509 - MCCLINTON, ANDRE L - Unit: JES-G-B
--------------------------------------------------------------------------------

result, inmates became frustrated with longer stays in prison, and this frustration persists today. Stover indicated, "While the Bureau has made marked improvements in our time credit calculation applications since the onset of the FSA statute, more improvements are needed. We have changes forthcoming that will simplify the data for both staff and inmates."

---

Getting The Word Out

As part of the Task Force's duties within the BOP, educating decision-makers at the Agency's 122 institutions is a priority. Stover has held meetings with wardens and regional directors to discuss FSA initiatives. Recently, video training sessions were conducted across the country to inform staff about the Task Force's role and address questions. He noted, "While training to wardens and other high ranking officials is great, the most significant training that we can provide is to the case managers who are on the front lines of this issue. If they understand how the calculations work, they can better explain the process to the inmates. Once the new time credit calculations take effect, our target audience to explain the updates will be the case managers throughout the Bureau."

Currently, the BOP is tackling these issues without an updated program statement, which serves as the rulebook for case managers overseeing FSA at the institutions. In the absence of this document, case managers have relied on internal memos and training to guide their work. FSA is just one part of their responsibilities, and numerous reports highlight staffing shortages, with case managers being reassigned to work as corrections officers due to inadequate staffing levels. Stover noted this policy is currently under review, and he is hopeful that expected changes to the policy can be adopted for the benefit of both staff and inmates.

---

Working Through The List

The Task Force is starting with the evaluation of those who are currently in halfway houses that could be transferred to home confinement if the inmates received the full benefit of "stacking" recommended Second Chance Act placement to FSA time credits, consistent with Director Marshall's guidance last month.. The Second Chance Act limits the amount of home confinement to 6 months (or 10%) from the end of the sentence, but the end of the sentence is a moving target for some inmates because they continue to earn FSA credits each month even when they are at the halfway house. The Task Force is manually calculating these dates for inmates in halfway houses, because the BOP's own computer program currently does not calculate these dates once inmates are released from prisons into the halfway houses, although Stover indicated such calculations will occur with the recent application updates.

Once that is done, then the Task Force will turn their efforts to those currently in prison and there it will get complicated. There are inmates who have received dates to transition to halfway houses but case managers previously have not revisited those dates based on the new guidance from BOP Director William Marshall III. The reasons for this are clear, it is more work for case managers who are reluctant to do work they have already done.

However, as a person who has seen prison from the inside, a small effort from someone at the BOP can have life altering effects on an inmate who deserves a second chance. Stover noted, "As we manually calculate these dates and move inmates from the halfway houses to home confinement, we expect this to create a sizable number of open beds in many of our halfway houses across the country. This allows us to then revisit the placement dates for inmates currently in our institutions and increase the number of inmates that we can place in the community, and in many instances, allow inmates to get out of prison quicker to begin their transition to go home."

---

Challenges Remain

As the Task Force continues its work, some challenges persist. Unlike FSA credits, which are earned automatically, Second Chance Act community placements are discretionary and constrained by halfway house capacity. To date, the BOP has provided limited explanation to inmates about why they have not been granted full Second Chance Act placement and have offered little transparency on halfway house availability. Inmates are simply assigned a transition date with no additional details. Since placement is discretionary, pursuing relief through administrative remedies is often futile, and even taking the issue to court after exhausting remedies is unlikely to result in action. Stover said, "The plan is to change this lack of transparency. Since Day One, Director Marshall's guidance has been clear. We have an obligation to staff, inmates, and their families to be

TRULINCS 35578509 - MCCLINTON, ANDRE L - Unit: JES-G-B

---

transparent, up front, and honest. FSA is a complicated statute, and we have made mistakes in the past. We own those. Moving forward, we must do better. Moving eligible inmates from prisons to the community not only saves taxpayer dollars, but it is consistent with what was expected when the FSA statute was enacted in late 2018."

The BOP seeks to preserve the resources of its contracted halfway houses by prioritizing inmates who may need housing after lengthy incarcerations. While this is a reasonable approach, it results in many minimum-security inmates with sentences under 5 years and stable home lives being kept in institutional settings longer. At the same time, some inmates with homes are receiving extended halfway house placements, causing frustration and resentment among the broader inmate population.

The Task Force is working, but it is a monumental task to overcome years of problems.


By Walter Pavlo
Forbes

# Home Confinement and Prerelease Placement Updates

### We're Maximizing Pre-Release Custody

The Bureau of Prisons (BOP) is combining or "stacking" two laws—the *First Step Act (FSA)* and the *Second Chance Act (SCA)*—with the goal of maximizing the amount of time eligible individuals can spend in prerelease custody.

### More People Will Go Directly to Home Confinement (HC)

- If you've earned time credits under the FSA and able to apply your credits and/or are eligible under the SCA, you do not require the services of a Residential Reentry Center (RRC), and meet eligibility requirements and are appropriate for HC, you shall be referred directly to **HC**.
- The goal is to reserve halfway house beds for those who need them most.

### Conditional Placement Dates

- For those who are FSA eligible and able to apply FTCs, your release to the community will be based on a **Conditional Placement Date**, which considers both your earned FSA Time Credits *and* whether you're eligible under the SCA.
- These are **projected dates,** meaning they assume you continue to successfully participate in programming and remain discipline-free.

### If You Qualify, Your Referral Should Not Be Delayed

- If you're eligible under FSA and/or SCA and meet all criteria, **your referral should not be delayed**.
- Staff will refer you based on your **Conditional Placement Date**, even before your credits are fully earned.

### What You Don't Need to Be Referred

- **You do not need to have prior employment** to be considered for home confinement.
- Your **potential** to work may be viewed positively, but it is not required.
- Your release plan, stability, and public safety risks are what matter most.

### The Rules Are Clear

- There is **no limit** on how many FSA credits you can apply toward home confinement.
- If you're only eligible under the SCA, your prerelease time is limited to **up to 12 months in a halfway house or up to 6 months (or 10% of your sentence) in home confinement**—whichever is less.
- For individuals who have earned less than 365 days of FSA Time Credits towards supervised release, staff must also consider adding **up to** an additional 12 months of prerelease time under the SCA, **based on the five-factor review.**
    - The FSA Time Credit Work Sheet for time under the SCA defaults to and will remain "0" until your Unit Team inputs the prerelease time as determined based on the five-factor review. This number will range from 0 to 12 months.

MCCLINTON, ANDRE 35578500

## FSA Time Credit Assessment
Register Number:35578-509, Last Name:MCCLINTON

**U.S. DEPARTMENT OF JUSTICE** — **FEDERAL BUREAU OF PRISONS**

--- Best Case Scenario - Conditional Pre-release Planning & Preparation Only ------------------
All conditional days and conditional dates below are the individual's best case scenario given the individual's FSA/FTC status and best case Second Chance Act (SCA) days as of 02-21-2025. These dates can change if there are changes to one or more of the following: the individuals FSA risk, FSA opt-in/opt-out status, or best case SCA days.

SCA DAYS ARE NOT GUARANTEED AND REQUIRE AN INDIVIDUALIZED ASSESSMENT! THEREFORE, IF A DEFAULT OF 365 DAYS IS REFLECTED, THIS DATE IS SUBJECT TO CHANGE BASED ON THE REQUIRED FIVE-FACTOR REVIEW UNDER 18 USC SEC. 3621(B). AN INDIVIDUAL WHO HAS PENDING CHARGES/DETAINERS ARE NOT ELIGIBLE FOR SCA TIME. THE FIVE-FACTOR REVIEW INVOLVES THE FOLLOWING: (1)THE RESOURCES OF THE FACILITY CONTEMPLATED; (2) THE NATURE AND CIRCUMSTANCES OF THE OFFENSE; (3) THE HISTORY AND CHARACTERISTICS OF THE PRISONER; (4) ANY STATEMENT BY THE COURT THAT IMPOSED THE SENTENCE: (a)CONCERNING THE PURPOSES FOR WHICH THE SENTENCE TO IMPRISONMENT WAS DETERMINED TO BE WARRANTED; OR (b) RECOMMENDING A TYPE OF PENAL OR CORRECTIONAL FACILITY AS APPROPRIATE; AND (5) ANY PERTINENT POLICY STATEMENT ISSUED BY THE U.S. SENTENCING COMMISSION.
---

Projected Release Date: 11-20-2029
Projected Release Method: GCT REL
FSA Projected Release Date: 11-20-2028
FSA Projected Release Method: FSA REL
FSA Conditional Release Date: 11-20-2028
SCA Conditional Placement Days: 365*
SCA Conditional Placement Date: 11-21-2027*
FSA Conditional Placement Days: 520
FSA Conditional Placement Date: 06-19-2027
Conditional Transition To Community Date: 06-19-2026*
**\*Default SCA conditional placement days. This requires a five-factor review!**

## FSA Time Credit Assessment
Register Number:35578-509, Last Name:MCCLINTON

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 35578-509 | Responsible Facility: JES |
| Inmate Name | Assessment Date.....: 02-21-2025 |
|   Last............: MCCLINTON | Period Start/Stop...: 05-27-2022 to 02-21-2025 |
|   First...........: ANDRE | Accrued Pgm Days....: 1001 |
|   Middle..........: L | Disallowed Pgm Days.: 0 |
|   Suffix..........: | FTC Towards RRC/HC..: 100 |
| Gender.............: MALE | FTC Towards Release.: 365 |
| Start Incarceration: 03-23-2022 | Apply FTC to Release: Yes |

```
Start        Stop         Pgm Status   Pgm Days
05-27-2022   12-21-2022   accrue       208
  Accrued Pgm Days...: 208
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 60
------------------------------------------------------------------------------
Start        Stop         Pgm Status   Pgm Days
12-21-2022   02-21-2025   accrue       793
  Accrued Pgm Days...: 793
  Carry Over Pgm Days: 28
  Time Credit Factor.: 15
  Time Credits.......: 405
--- FSA Assessment(s) --------------------------------------------------------
 #    Start        Stop         Assignment   Asn Start         Factor
001   05-27-2022   06-24-2022   R-LW         06-19-2022 19:09  10
002   06-24-2022   12-21-2022   R-LW         06-19-2022 19:09  10
003   12-21-2022   06-19-2023   R-MIN        11-17-2022 07:55  15
004   06-19-2023   12-16-2023   R-MIN        04-25-2023 15:03  15
005   12-16-2023   06-13-2024   R-MIN        10-04-2023 19:29  15
006   06-13-2024   12-10-2024   R-MIN        04-04-2024 09:32  15
007   12-10-2024   06-08-2025   R-MIN        09-18-2024 11:15  15
```



U.S. Department of Justice
Federal Bureau of Prisons

FOR IMMEDIATE RELEASE
June 17, 2025

Contact: Office of Public Affairs
202-514-6551

## Bureau of Prisons Issues Directive to Fully Implement First Step Act and Second Chance Act

**WASHINGTON, DC** - In order to restore integrity and fiscal responsibility to the federal prison system, the Bureau of Prisons (BOP) today issued a policy memorandum to staff directing the robust and comprehensive implementation of both the *First Step Act of 2018* and the *Second Chance Act of 2008*—two bipartisan cornerstones of modern criminal justice reform.

"This is the dawn of a new era, one in which the Bureau of Prisons will realize the full potential of the First Step Act and Second Chance Act," said BOP Director William K. Marshall III. "The comprehensive policy outlined today will eliminate barriers to maximize the availability of home confinement to those who qualify for community release under the First Step Act and Second Chance Act. This change in policy will fully operationalize the laws as intended by Congress and ensure a smoother transition for many individuals to return to productive lives after incarceration."

The new policy announced today will have immediate and meaningful benefits. It will:

- **Avoid wasting millions of taxpayer dollars** on unnecessary incarceration,
- **Reduce strain on prison bedspace and staffing**, and
- **Eliminate prolonged and unnecessary burdens on inmates and their families**—particularly those with stable home environments and strong community ties.

The new directive ensures that:

- **FSA Earned Time Credits and SCA eligibility will be treated as cumulative and stackable**, allowing qualified individuals to serve meaningful portions of their sentences in home confinement when appropriate.
- **Conditional Placement Dates**—based on projected credit accrual and statutory timelines—will drive timely referrals, not bureaucratic inertia.
- **Stable housing and community reintegration readiness**, not past employment, will guide placement decisions.
- **RRC bed capacity limitations will not be a barrier to Home Confinement** when an individual is statutorily eligible and appropriate for such placement.

Director Marshall continued: "This action marks a bold shift from years of inaction toward a policy rooted in **public safety, fiscal responsibility, and second chances**. By empowering the agency to release more people who are ready to return to society, we not only save taxpayer dollars, we strengthen families, ease overcrowding, and build safer communities."

###

Exhibit

# AIC TALKING POINTS FOR FSA TIME CREDIT WORKSHEET
## NEW PLANNING SECTION

- The FSA Time Credit Worksheets will include a **Best-Case Scenario – Conditional Pre-Release Planning and Preparation Only** section located at the bottom of your credit worksheet. Keep in mind, this is a **PLANNING TOOL** for employees and adults in custody (AIC) to prepare for release and community placement. It is important to note – these dates are subject to change due to various reasons: behavior, program participation, eligibility, appropriateness, and available community resources.
- Worksheets generated on Sept 5 & 6, 2024, were distributed prematurely. The calculated dates of the FSA Conditional Placement dates were not consistent with the limitations in the law. The FSA Statue states: "has earned time credits under the risk and needs assessment system developed under subsystem D, in an amount that is equal to the remainder of the prisoner's-imposed term of imprisonment. This means time credits cannot be applied until the amount of time credits earned equals the time remaining to serve.
- If you were teamed since the September worksheet was generated, your Unit Team will provide you an updated copy. For everyone else, you will be provided a credit worksheet at regularly scheduled teams.

## Understanding Federal Time Credits

[Fede]ral Time Credits (FTC) system helps you earn credits based on programs you complete while in [custody.] These credits can reduce your time before you are placed in community settings like [Residenti]al Reentry Centers (RRCs)/Work-Release Centers (WRCs) or home confinement.

## New Dates in the System

T[hese imp]ortant dates are now shown in your records to help plan your release:

- **FTC Conditional Placement Date**: This date reflects the maximum amount of FSA Federal Time Credits an FSA eligible individual can earn towards pre-release confinement (Residential Reentry Center/Work Release Center or home confinement) given their current PATTERN risk level. If this date is 'N/A' then

Andre McClinton
#35578509
Federal Prison Camp
2600 Hwy 301 South
Jesup, GA. 31599



Clerk of Courts
Frank M. Scarlett Federal Bld.
801 Gloucester Street
Brunswick, GA. 31520

